United States Bankruptcy Court
Southern District of Texas

**ENTERED**

January 23, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 23-90611** |
| **WESCO AIRCRAFT** | § | |
| **HOLDINGS, INC.,** *et al.*, | § | **CHAPTER 11** |
| | § | |
| Debtors. | § | |
| | § | |
| **WESCO AIRCRAFT** | § | |
| **HOLDINGS, INC.,** *et al.*, | § | |
| | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 23-3091** |
| | § | |
| **SSD INVESTMENTS LTD.,** *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

### SUPPLEMENT TO MEMORANDUM OPINION

This supplement addresses issues identified for review during the January 18, 2024, hearing. All issues not specifically addressed in this supplement remain unchanged from the January 14, 2024, memorandum opinion. ECF No. 508.

### I.    LANGUR MAIZE'S ARTICLE III STANDING

The first issue is whether, upon the sale of the 2027 Notes from the prior beneficial owners to Langur Maize, the prior beneficial owners' claims against entities not covered by N.Y. Gen. Oblig. L. § 13-107 were assigned to Langur Maize. If the sellers' claims for injuries remain with the sellers, then Langur Maize does not have Article III standing to bring claims against entities not covered by § 13-107. Alternatively, if those claims were automatically assigned to Langur Maize through

operation of provisions of the Indenture, then Langur Maize may bring its claims against entities not covered by § 13-107.

Langur Maize argues that, if the sellers of the 2027 Notes had claims assignable to Langur Maize, those claims were automatically assigned to Langur Maize through the Indenture and the Notes.  ECF No. 524 at 6.  Langur Maize cites to § 2.06(b) of the Indenture, which states:

> The transfer and exchange of beneficial interests in the Global notes will be effected through the Depositary, in accordance with the provisions of this Indenture and the Applicable Procedures. . . . Beneficial interests in any Restricted Global Note may be transferred to Persons who take delivery thereof in the form of a beneficial interest in the same Restricted Global Note . . . .

ECF No. 201-4 at 53–54.  Langur Maize argues that "no separate assignment" is needed because this provision acts as an automatic assignment of all claims.  ECF No. 524 at 6; *see Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 151–52 (2d Cir. 1995) ("New York does not require specific boilerplate language to accomplish the transfer of causes of action . . . .").

Langur Maize also argues that DTC cannot authorize entities that are no longer beneficial owners to bring suit.  ECF No. 524 at 5.  Platinum and Carlyle argue that the lack of authorization may provide third parties with a contractual defense against prior beneficial owners but does not change the fact that only the prior beneficial owners have Article III standing.  ECF No. 533 at 7.

Platinum's and Carlyle's argument would produce an absurd result.  Put simply, the sellers to Langur Maize would "own" claims, but could never prosecute them.  It makes no sense.  Conversely, Langur Maize's argument would produce a workable system, but the Indenture

has no clear statement that supports the position. Inasmuch as the result would be inconsistent with the New York statute, the Court is reluctant to find an elephant in the Indenture's mouseholes.

At this stage, no party has provided a persuasive interpretation of the Indenture as to whether the claims were transferred. Until a party demonstrates clarity in the Indenture, the Court will treat the Indenture as ambiguous on this issue. This issue is reserved for trial. A genuine issue of material fact remains as to whether Langur Maize has Article III standing to assert its claims against entities not covered by N.Y. Gen. Oblig. L. § 13-107.

## II. BREACH OF CONTRACT CLAIMS AGAINST WSFS AND GUARANTOR DEFENDANTS

The next issue is whether the claims against WSFS should be dismissed under the provisions in the Indentures protecting WSFS from liability.

Section 7.01(b)(2) of the Indentures provides "in the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture." ECF No. 204-2 at 121. Section 7.01(c) provides "[t]he Trustee may not be relieved from liabilities for . . . its own willful misconduct. . . ." ECF No. 204-2 at 121. Section 7.01 protects WSFS from liability for the performance of its duties, so long as it did not engage in willful misconduct and relied in good faith on certificates or opinions furnished to it.

With respect to the 2024/2026 Noteholders' claims for a breach of §§ 2.01 and 4.12 of the Indentures, a plain reading of these sections indicates they apply only to actions of the Issuer. ECF No. 204-2 at 55; ECF No. 204-3 at 5; ECF No. 204-2 at 101; ECF No. 204-3 at 100. WSFS is not the Issuer, so it cannot be subject to §§ 2.01 and 4.12. This same reasoning also applies to the Guarantor Defendants. The claims for

breach of §§ 2.01 and 4.12 are dismissed against WSFS and the Guarantor Defendants.

The 2024/2026 Noteholders' and Langur Maize's remaining contract claims are not limited to actions of the Issuer. These claims will be dismissed against WSFS if WSFS did not act in bad faith in performing its duties during the 2022 Transaction.

The 2024/2026 Noteholders bear the burden of showing bad faith or willful misconduct. *See Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09CV3312PKCVMS, 2017 WL 1194730, at \*14 (E.D.N.Y. Mar. 30, 2017), *aff'd*, 910 F.3d 705 (2d Cir. 2018). In deciding bad faith, whether WSFS is actually liable is irrelevant. *Hanover Ins. Co. v. D'Angelo*, No. CV134301JMAARL, 2016 WL 4402251, at \*7 (E.D.N.Y. July 18, 2016), *report and recommendation adopted*, No. 13-CV-4301, 2016 WL 4402018 (E.D.N.Y. Aug. 17, 2016). Instead, "New York courts have equated 'bad faith' with fraud or collusion." *Id.* (internal quotation marks omitted) (quoting *Amaya v. Garden City Irr., Inc.*, No. 03-CV-2814, 2011 WL 564721, at \*3 (E.D.N.Y. Feb. 15, 2011)).

The 2024/2026 Noteholders claim that WSFS acted in bad faith because it "assumed the role of trustee specifically so that it could carry out the 2022 Transaction." ECF No. 299 at 63. The 2024/2026 Noteholders further argue that "WSFS received drafts of the 2022 Transaction in early March, *before* it assumed the role of successor trustee," and "WSFS's post hoc reliance on those documents raises, at minimum, a disputed issue of fact as to its good faith." The 2024/2026 Noteholders have submitted evidence that drafts of a sub-set of the 2022 Transaction documents were sent to WSFS prior to the execution of the 2022 Transaction. ECF No. 277-20 at 2. They have also submitted evidence of an email sent to WSFS expressing the urgency of WSFS stepping into its Trustee role. ECF No. 277-9 at 2 ("[W]e'd like to have a call this afternoon with your counsel to kick off that process as we're under a very tight timeline.").

The 2024/2026 Noteholders' evidence is insufficient to meet a threshold showing of WSFS' bad faith reliance or willful misconduct to avoid summary judgment. The bad faith standard under New York law

bears a high burden of showing conduct rising to the level of fraud or collusion.  The dates on which draft documents were shared with WSFS, or any emails expressing urgency, are insufficient to raise a genuine issue of such conduct.  The 2024/2026 Noteholders' arguments are no more than conclusory allegations of bad faith.

The 2024/2026 Noteholders second cause of action for breach of contract is dismissed against WSFS.  Langur Maize's first cause of action for breach of § 3.02, second cause of action for breach of § 6.05, and third cause of action for breach of § 9.02 are dismissed against WSFS. The 2024/2026 Noteholders' claims for breach of §§ 2.01 and 4.12 are dismissed against the Guarantor Defendants.

SIGNED 01/23/2024

Marvin Isgur
United States Bankruptcy Judge